## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **WILL G. WALKER,** | ) |
| | ) |
| **Petitioner,** | ) |
| | ) |
| **v.** | )  **Case No. 13-CV-0233-GKF-PJC** |
| | ) |
| **JOE M. ALLBAUGH, Interim Director,[1]** | ) |
| | ) |
| **Respondent.** | ) |

## OPINION AND ORDER

Before the Court is the petition for writ of habeas corpus (Dkt. # 1) filed by Petitioner Will Walker, a state prisoner appearing pro se. Respondent filed a response (Dkt. # 10) and provided the state court records (Dkt. # 11) necessary for adjudication of Petitioner's claims. Petitioner filed a reply to the response (Dkt. # 12) and a "Motion for Stay to Pose Question to the Oklahoma [] Court of Criminal Appeals" (Dkt. # 13). Respondent filed a response to the motion to stay (Dkt. # 14). For the reasons discussed below, the Court denies Petitioner's motion to stay and petition for writ of habeas corpus.

### *BACKGROUND*

On June 17, 2008, shortly before midnight, Hamad Ahmad – the clerk at the Diamond Shamrock convenience store located in Tulsa, Oklahoma – heard someone enter the store and turned to see Petitioner advance towards him wearing a mask over his face. Dkt. # 11-1, Trial Tr. at 89-90,

---

[1]Petitioner is currently housed at Lawton Correctional Facility, a private prison. The current state officer having custody of Petitioner is Joe M. Allbaugh, Interim Director of the Oklahoma Department of Corrections. Therefore, pursuant to Rule 2(a), Rules Governing Section 2254 Cases, the proper party respondent is Joe M. Allbaugh, Interim Director. Under Fed. R. Civ. P. 25, Joe M. Allbaugh is hereby substituted as party respondent in place of Justin Jones, Director. The Clerk of Court shall note the substitution on the record.

93-94.  Petitioner jumped the counter and grabbed Ahmad.  Id. at 93-94.  Ahmad testified Petitioner "pull[ed] [him] down and hit [him] and choke[d] [him]."  Id. at 94.  Ahmad further testified that he thought Petitioner might have a weapon because, more than once, Petitioner's hand went "back on his back like he has something . . . in [his] pants," id. at 95, and that Petitioner told him "just do [] what I'm saying and don't try to be funny, otherwise you [sic] going down, man."  Id. at 110.

Petitioner ordered Ahmad to give him money, and Ahmad complied, giving Petitioner $100 from under the counter.  Id. at 96.  Petitioner then demanded more money, and Ahmad gave him an additional $200.  Id. at 97-98.  Petitioner also took several boxes of cigars.  Id. at 98-99; Dkt. # 11-3 at 5.  After putting the money and the cigars into a brown paper sack, Petitioner started to leave the store.  Dkt. # 11-1, Trial Tr. at 101.  At that time, Ahmad retrieved a baseball bat from behind the counter and struck Petitioner twice in the head.  Id. at 101-02.  Petitioner exited the store and attempted to cross the parking lot when Ahmad tackled him and, with another customer's help, held Petitioner until the police arrived.  Id. at 104, 107.

The State charged Petitioner with First Degree Robbery (Count I) and Resisting an Officer (Count II) in Tulsa County District Court, Case No. CF-2008-2941.  Dkt. # 10-1 at 1.  Attorney J. Brian Rayl represented Petitioner at trial.  Dkt. # 10-4 at 3.  A jury found Petitioner guilty as charged, id. at 1, and recommended a sentence of twenty-four (24) years imprisonment on Count I and a $500 fine on Count II.[2]  Id.  The trial judge sentenced Petitioner in accordance with the jury's recommendations.  Id.

_____

[2] First Degree Robbery is an "eighty-five percent" crime under Oklahoma law, meaning Petitioner must serve not less than eighty-five percent of the twenty-four year sentence prior to becoming eligible for parole and eligible to earn sentence credits.  Okla. Stat. tit. 21, § 13.1(9).

Petitioner perfected a direct appeal to the Oklahoma Court of Criminal Appeals (OCCA) (Dkt. ## 10-1, 10-2).  Attorney Stuart Southerland represented Petitioner on appeal.  Dkt. # 10-4 at 3.  Petitioner raised two (2) propositions of error in his appellate brief, as follows:

Proposition 1:     The evidence was insufficient to support the jury's verdict.

Proposition 2:     The jury instruction defining critical language applicable to both first and second degree robbery was inaccurate, misleading, and served to prejudice Appellant and deny him the right to due process and a fair trial pursuant to the Fourteenth Amendment to the United States Constitution.

(Dkt. # 10-1).  Petitioner also raised one (1) proposition of error in a pro se supplemental brief, as follows:

Proposition 3:     Appellant was not provided reasonable [sic] effective cross[-] examination by trial counsel, denied him right to a fair trial and due process of law, due to ineffective assistance of trial counsel. U.S.C.A. Const. Amends. 6, 14; Okla. Const. Art. 2, Sections 20, 7, 6.

(Dkt. # 10-2).  In an unpublished summary opinion, entered August 25, 2009, in Case No. F-2008-1116, the OCCA denied relief on all three propositions of error and affirmed the trial court's judgments and sentences.  Dkt. # 10-4.

Petitioner filed a petition for rehearing (Dkt. # 10-5).  In his petition, Petitioner contended the OCCA "failed to adequately address the argument, in his second proposition of error, that the jury was improperly instructed as to critical language in both first *and* second degree robbery."  Id. at 1.  In an order filed September 17, 2009, the OCCA granted the petition for rehearing "for the limited purpose of addressing this oversight," but denied the requested relief.  Dkt. # 10-6 at 2.

On October 14, 2010, Petitioner filed his first application for post-conviction relief.  See Dkt. # 10-7.  Petitioner raised three (3) propositions of error, as follows:

Proposition 1:          Numerous errors of trial counsel deprived Petitioner of a full and fair hearing regarding his rights under the U.S. Const. Fourth Amend. and Okla. Const. Art. 2 § 30, which was ineffective assistance of counsel under the U.S. Const. Fifth, Sixth, Fourteenth Amends. and Okla. Const. Art. 2 § 7.

Proposition 2:          Appellate counsel failed to raise meritorious issues warranting modification of sentence, which was ineffective assistance of counsel under the U.S. Const. Fifth, Sixth, and Fourteenth Amendments, and Okla. Const. Art. 2 §§ 7 & 20, and 22 O.S. § 1051.

Proposition 3:          I was denied my constitutional right when prosecution entered tainted evidence as facts of the case.

(Id.).  The trial judge denied Petitioner's application for post-conviction relief (Dkt. # 10-8).  On

March 21, 2013, the OCCA affirmed the trial judge's denial of Petitioner's application for post-

conviction relief, denying Proposition 2 on the merits and concluding Propositions 1 and 3 were

procedurally barred.  Dkt. # 10-10 at 2-4.

On April 24, 2013, Petitioner filed a federal petition for writ of habeas corpus (Dkt. # 1).

In his petition, Petitioner identifies four (4) grounds of error, as follows:

Ground 1:          The State [sic] evidence is insufficient to support the jury verdict of guilty under Jackson v. Virginia, 28 U.S.C.A. § 2254(d).

Ground 2:          The jury instruction defining critical language applicable to both first and second degree robbery was inaccurate, misleading and served to prejudice Walker's right to a fair trial, due process of law and a fair trial pursuant to U.S.C.A.

Ground 3:          Trial counsel was constitutionally ineffective assistance [sic] for failing to develope [sic] evidence relevant to charged crime pursuant to the 6th, 14th amendments to the U.S. Constitution.

Ground 4:          I was denied my constitutional right when prosecution entered tainted evidence as facts of the case.

(Id.).  In response to the petition, Respondent contends Petitioner is not entitled to habeas corpus

relief (Dkt. # 10).

4

On June 7, 2013, after filing his petition for writ of habeas corpus, Petitioner filed a subsequent application for post-conviction relief.  <u>See</u> http://www.OSCN.net.  Petitioner raised one (1) proposition of error, as follows:

> Proposition I:     Due to an intervening change in the law, the jury instructions defining critical language applicable to both First Degree Robbery and Second Degree Robbery [were] inaccurate, misleading, and served to prejudice Appellant and deny him the right to due process and a fair trial pursuant to the Fourteenth Amendment of the United States Constitution.

(<u>Id.</u>).  The trial court denied Petitioner's subsequent application for post-conviction relief, <u>id.</u>, and the OCCA affirmed, concluding Petitioner's claim was procedurally barred.  <u>Id.</u>

On December 1, 2015, Petitioner filed a "Motion for Stay to Pose Question to the Oklahoma [] Court of Criminal Appeals" (Dkt. # 13).  Respondent contends the Court should deny the motion as "Petitioner has submitted no sufficient basis for the relief he requests in his motion."  Dkt. # 14 at 1 (citation omitted).

## *ANALYSIS*

### A.     **"Motion for Stay"**

In his "Motion for Stay to Pose Question to the Oklahoma [] Court of Criminal Appeals" (Dkt. # 13),  Petitioner requests the Court certify a question to the OCCA regarding the definition of "serious bodily injury."  Petitioner identifies his question as "Did 'serious bodily injury' have the same meaning under Oklahoma legislative intent in June of 2009, when petitioner-appellant's criminal conviction for First Degree Robbery was affirmed as it did in January 2010 when <u>Owens</u> was reversed?"  <u>Id.</u> at 1, 4.  Petitioner alleges this question impacts his claims challenging the sufficiency of the evidence and the adequacy of the jury instructions, discussed in Part B, below.

In <u>Owens v. State</u>, 229 P.3d 1261 (Okla. Crim. App. 2010), decided four (4) months after Petitioner's convictions were affirmed, the OCCA provided guidance as to what constitutes "serious bodily injury."   The OCCA granted relief in <u>Owens</u> because the evidence in that case was insufficient to demonstrate "serious bodily injury" as required to establish First Degree Robbery and the trial judge failed to instruct the jury on Second Degree Robbery.  <u>Id.</u> at 1264-66.  In contrast, in Petitioner's case, the OCCA ruled that the evidence was sufficient to demonstrate that Petitioner "put the victim in fear of immediate serious bodily injury" as required to establish First Degree Robbery.  <u>See</u> Dkt. # 10-4 at 2 n.1.   In addition, unlike <u>Owens</u>, Petitioner's jury received an instruction on Second Degree Robbery.  <u>See</u> Dkt. # 11-2, O.R. at 47.

Under Oklahoma's Revised Uniform Certification of Questions of Law Act, Okla. Stat. tit. 20, § 1601, *et seq.*, this Court may certify a question of state law to the OCCA.  The Court will only certify a question of state law if it is both 'unsettled and dispositive.'  <u>Kan. Judicial Rev. v. Stout</u>, 519 F.3d 1107, 1119 (10th Cir. 2008) (citation omitted).  "The decision to certify rests in the sound discretion of the federal court," and "[c]ertification is not to be routinely invoked whenever a federal court is presented with an unsettled question of state law."  <u>Id.</u> at 1119-20 (citations and internal quotation marks omitted).

The Court declines to certify the question of state law to the OCCA as it is not dispositive of Petitioner's claims as raised in this habeas case.  In ruling on Petitioner's claims on direct appeal, the OCCA recognized that the "fear of immediate injury" instruction "no longer applies to the crime with which Walker was charged" and that the instructions lacked a definition of "serious bodily

harm." <u>See</u> Dkt. # 10-4 at 2 & n.2.[3]  Nonetheless, the OCCA held "[s]ufficient evidence showed Walker's actions put the victim in fear of immediate serious bodily injury."  <u>Id.</u> at 2 n.1. Additionally, the OCCA concluded any error in the instructions did not prejudice Petitioner.  <u>Id.</u> at 2 & n.2.  Therefore, Petitioner was not entitled to relief, even though the instructions failed to define "serious bodily injury."  <u>Id.</u>  Because Petitioner's proposed question of state law is not dispositive of his claims, <u>see</u> analysis in Part B below, this Court declines to certify the question to the OCCA. Petitioner's "motion for stay" shall be denied.

**B.      Petition for a Writ of Habeas Corpus**

**1.      Exhaustion/Evidentiary Hearing**

As a preliminary matter, the Court must determine whether Petitioner meets the exhaustion requirements of 28 U.S.C. § 2254(b), (c).  <u>See</u> <u>Rose v. Lundy</u>, 455 U.S. 509, 510 (1982).  Petitioner presented his claims to the OCCA on either direct or post-conviction appeal.  Therefore, the exhaustion requirement of 28 U.S.C. § 2254(b) is satisfied.

In addition, the Court concludes Petitioner is not entitled to an evidentiary hearing.  <u>See</u> <u>Williams v. Taylor</u>, 529 U.S. 420 (2000).

**2.      Claims Adjudicated by the OCCA**

The Antiterrorism and Effective Death Penalty Act (AEDPA) provides the standard to be applied by federal courts reviewing constitutional claims brought by prisoners challenging state convictions.  Under the AEDPA, when a state court has adjudicated a claim, a petitioner may obtain federal habeas relief only if the state court decision "was contrary to, or involved an unreasonable

---

[3]The OCCA referred "to the Oklahoma Uniform Jury Instruction Committee (Criminal) the question of the definition of 'fear of immediate injury' in OUJI-CR 1-146, along with the question of the need for a definition of 'serious bodily harm' in this context."  (Dkt. # 10-4 at 2).

application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." See 28 U.S.C. § 2254(d); Harrington v. Richter, 562 U.S. 86, 102-03 (2011); Williams v. Taylor, 529 U.S. 362, 386 (2000); Neill v. Gibson, 278 F.3d 1044, 1050-51 (10th Cir. 2001). "Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of [the Supreme Court's] decisions." White v. Woodall, 134 S. Ct. 1697, 1702 (2014) (citations omitted).

When a state court applies the correct federal law to deny relief, a federal habeas court may consider only whether the state court applied the federal law in an objectively reasonable manner. See Bell v. Cone, 535 U.S. 685, 699 (2002); Hooper v. Mullin, 314 F.3d 1162, 1169 (10th Cir. 2002). An unreasonable application by the state courts is "not merely wrong; even 'clear error' will not suffice." White, 134 S. Ct. at 1702 (citation omitted). The petitioner "must show that the state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. (citation and internal quotation marks omitted); see Metrish v. Lancaster, 133 S. Ct. 1781, 1787 (2013).

Generally, a federal habeas court has no authority to review a state court's interpretation or application of its own state laws. Estelle v. McGuire, 502 U.S. 62, 67–68 (1991) (emphasizing it is not the province of a federal habeas court to reexamine state court determinations on state law questions). When conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. Id. at 68 (citations omitted).

    a.      **Sufficiency of the Evidence (Ground 1)**

8

In Ground 1, Petitioner contends "[t]he State [sic] evidence is insufficient to support the jury verdict of guilty under <u>Jackson v. Virginia</u>, 28 U.S.C.A. § 2254(d)" because he "was convicted of first degree robbery, but the State did not have sufficient evidence to support that."  Dkt. # 1 at 5. In a habeas proceeding, the Court reviews the sufficiency of the evidence "in the light most favorable to the prosecution" and asks whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979) (citation omitted).  "This standard of review respects the jury's responsibility to weigh the evidence and to draw reasonable inferences from the testimony presented at trial." <u>Dockins v. Hines</u>, 374 F.3d 935, 939 (10th Cir. 2004) (citation omitted).  The Court "impinges upon 'jury' discretion only to the extent necessary to guarantee the fundamental protection of due process of law." <u>Jackson</u>, 443 U.S. at 319 (footnote omitted).  The Court must  "accept the jury's resolution of the evidence as long as it is within the bounds of reason." <u>Grubbs v. Hannigan</u>, 982 F.2d 1483, 1487 (10th Cir. 1993) (citations omitted).

Under Oklahoma law, the elements of First Degree Robbery are (1) wrongful, (2) taking, (3) carrying away, (4) personal property, (5) of another, (6) from the person or immediate presence of another, (7) when, in the course of the robbery, (8) the defendant intentionally put a person in fear of immediate serious bodily injury.  <u>See</u> Okla. Stat. tit. 21, § 791; OUJI-CR 4-141.

As set forth above, Hamad Ahmad – the clerk at the Diamond Shamrock convenience store – testified Petitioner entered the store shortly before midnight wearing a mask.  Dkt. # 11-1, Trial Tr. at 89-90.  Ahmad also testified Petitioner "jump[ed] over [the] counter . . . and pull[ed] me down and hit me and choke[d] me" and demanded Ahmad give him money.  <u>Id.</u> at 93-95.  Ahmad stated he thought Petitioner might have a weapon because "his hand is going back on his back like he has

9

something in, like, you know, in the pants," id. at 95, and Petitioner told him "just do [] what I'm saying and don't try to be funny, otherwise you [sic] going down, man." Id. at 110. Ahmad testified he gave Petitioner $300, and Petitioner grabbed several boxes of cigars and put them and the money in a brown paper sack before leaving the store. Id. at 96-99, 101.

Based on that testimony, a reasonable jury could have found that Petitioner engaged in the wrongful taking and carrying away of the personal property of another from the immediate presence of another and that Petitioner, in the course of the robbery, intentionally put a person in fear of immediate serious bodily injury. Viewed in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime of First Degree Robbery beyond a reasonable doubt. Therefore, the Court concludes the OCCA's decision was not contrary to, nor did it involve an unreasonable application of, clearly established federal law as determined by the Supreme Court. Habeas corpus relief is denied on Ground 1.

**b.      Jury Instructions (Ground 2)**

In Ground 2, Petitioner contends "[t]he jury instruction defining critical language applicable to both first and second degree robbery was inaccurate, misleading and served to prejudice [Petitioner's] right to a fair trial, due process of law and a fair trial." Dkt. # 1 at 6. The trial judge instructed Petitioner's jury that, to find Petitioner guilty of First Degree Robbery, they must find "the  defendant intentionally put a person in fear of immediate serious bodily injury" and, to find Petitioner guilty of Second Degree Robbery, they must find Petitioner accomplished the robbery "by force and/or fear." Dkt. # 11-2 at 46, 47 (Instruction Nos. 15, 16). Instruction No. 17 defined "Fear of Immediate Injury (First-Degree Robbery)" as fear "of such nature as, in reason and common experience, is likely to induce a person to part with his property against his will and temporarily to

suspend his power to exercise will." Id. at 49.  The jury instruction did not include definitions of "serious bodily injury" or "fear of immediate serious bodily injury."  Additionally, Instruction No. 17 defined "force" as "any degree, used to obtain or to retain possession of property or to prevent or to overcome resistance to its taking" and defined "Fear (Second-Degree Robbery)" as "[f]ear of unlawful future injury to the person of the one robbed." Id.

On direct appeal, the OCCA denied relief, finding as follows:

> We find in Proposition II that the trial court gave the standard uniform jury instructions for first degree robbery, and Walker has not shown prejudice from these instructions.  Insofar as Walker may claim the trial court should have *sua sponte* defined "serious bodily injury" for jurors, there is no plain error in the trial court's failure to do so.  We refer to the Oklahoma Uniform Jury Instruction Committee (Criminal) the question of the definition of "fear of immediate injury" in OUJI-CR (2d) 1-146, along with the question of the need for a definition of "serious bodily harm" in this context, for its consideration.

Dkt. # 10-4 at 2 (footnotes omitted).  In addition, the OCCA addressed Petitioner's challenge to the jury instruction defining "fear" as required for Second Degree Robbery, see Dkt. # 10-1 at 16-17, in its order granting the petition for rehearing and denying relief (Dkt. # 10-6).  The OCCA conceded "the unpublished Opinion in this case did not specifically address his Proposition II argument regarding the jury instruction defining 'fear' as it applied to second degree robbery" and "concluded that, as evidence supports [Petitioner's] conviction for the charged crime and jurors did not find [Petitioner] guilty of the lesser included offense, any error in instruction regarding second degree robbery was moot." Id. at 2.

In general, matters concerning jury instructions are considered questions of state law and are not proper subjects of federal habeas corpus review under 28 U.S.C. § 2254.  Patton v. Mullin, 425 F.3d 788, 807 (10th Cir. 2005); see Rose v. Hodges, 423 U.S. 19, 22 (1975) (stating federal habeas relief is not permitted for state law errors).  It is well established that "errors in jury instructions in

11

a state criminal trial are not reviewable in federal habeas corpus proceedings, unless they are so fundamentally unfair as to deprive petitioner of a fair trial and to due process of law." Nguyen v. Reynolds, 131 F.3d 1340, 1357 (10th Cir. 1997) (internal quotation omitted); see Maes v. Thomas, 46 F.3d 979, 984 (10th Cir. 1995) ("A state conviction may only be set aside in a habeas proceeding on the basis of erroneous jury instructions when the errors had the effect of rendering the trial so fundamentally unfair as to cause a denial of a fair trial." (citation omitted)).

To determine whether Petitioner was deprived of a fundamentally fair trial and due process of law, the Court must consider the challenged jury instructions "in the context of the instructions as a whole and the trial record" and ask if "the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." Estelle, 502 U.S. at 72 (internal quotation marks and citations omitted). "An omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." Maes, 46 F.3d at 984 (citation and internal quotation marks omitted). "In reviewing an ambiguous instruction . . . we inquire whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution." Estelle, 502 U.S. at 72 (internal quotation omitted). The Court also considers that:

> [j]urors do not sit in solitary isolation booths parsing instructions for subtle shades of meaning in the same way that lawyers might. Differences among them in interpretation of instructions may be thrashed out in the deliberative process, with commonsense understanding of the instructions in the light of all that has taken place at the trial likely to prevail over technical hairsplitting.

Boyde v. California, 494 U.S. 370, 380-81 (1990).

The Court cannot say that, in light of the record as a whole, the jury instructions rendered Petitioner's trial fundamentally unfair. Petitioner's jury received instructions for both First Degree

Robbery and the lesser included offense of Second Degree Robbery.[4]  See Dkt. # 11-2, O.R. at 46-47

(Instruction Nos. 15, 16).  Significantly, the trial court properly instructed the jury on the elements

of First and Second Degree Robbery.  Id.  While "fear of an unlawful injury, immediate or future"

is part of the general statutory definition of "robbery," see Okla. Stat. tit. 21, §§ 791, 794, Instruction

No. 17 provided separate definitions of "fear" for first and second degree robbery that are confusing.

However, the definitions were not given in isolation but in conjunction with the elements required

for First Degree Robbery, including of "fear of immediate serious bodily injury" (Instruction No.

15), and the elements required for the lesser included offense of Second Degree Robbery, including

"by force and/or fear" (Instruction No. 16).[5]  In addition, although "immediate serious bodily injury"

was not defined in the instructions, the jury heard Ahmad testify that Petitioner told him if he did

not cooperate he "was going to go down" and Petitioner repeatedly put his hand on his back as if

he had a weapon in his pants.  Dkt. # 11-1, Trial Tr. at 95, 110.  The Court determined in Part B.1

above, that the evidence was sufficient to support the conviction of First Degree Robbery.

The Court also finds that limiting the definition of "fear" required for Second Degree

Robbery to "[f]ear of unlawful future injury to the person of the one robbed," Dkt. # 11-2, O.R. at

49 (Instruction No. 17), did not render Petitioner's trial fundamentally unfair.  Petitioner's behavior,

as described by Ahmad, constituted not merely a threat of immediate injury but a threat of

---

[4] In contrast, in Owens v. State, 229 P.3d 1261 (Okla. Crim. App. 2010), discussed above in Part A, the trial judge did not instruct on Second Degree Robbery.  In the absence of the lesser included offense instruction, the OCCA reversed and remanded for a new trial, finding that insufficient evidence supported the defendant's First Degree Robbery conviction.  Id. at 1265-66.

[5] In Owens, the OCCA explained that prior to 2001, any robbery during which force was employed was First Degree Robbery.  In 2001, the statute was amended to incorporate the distinction between a robbery using or threatening force causing serious bodily injury and a robbery using any other force.  Owens, 229 P.3d at 1264 n.7.

immediate serious bodily injury, thereby supporting the conviction of First Degree Robbery. Because the jury found Petitioner guilty beyond a reasonable doubt of First Degree Robbery, Instruction No. 16 directed that the jury need not consider the lesser included offense of Second Degree Robbery.  Dkt. # 11-2, O.R. at 47.  As a result, the omission of fear of "immediate" injury from the definition of "Fear (Second-Degree Robbery)" did not prejudice Petitioner.

After viewing the challenged jury instructions in the context of the instructions as a whole and the trial record, the Court finds that the challenged instructions did not so infect the entire trial that the resulting conviction violates due process.  Therefore, the OCCA's adjudication of this claim was not contrary to, nor did it involve an unreasonable application of, clearly established federal law as determined by the Supreme Court.  Habeas corpus relief is denied on Ground 2.

### c.        Ineffective Assistance of Trial Counsel (Ground 3)

As his third ground of error, Petitioner claims he received ineffective assistance of counsel when his trial counsel "failed to investigate witnesses and evidence, failed to call witnesses, failed to challenge evidence and testimony, and committed other errors which failed to submit the prosecution's case to adversarial testing."  Dkt. # 1 at 8.  In his petition for writ of habeas corpus, Petitioner indicated that he raised this claim both on direct and post-conviction appeal.  Therefore, the Court liberally construes Ground 3 as including both the claims raised in Proposition 3 of Petitioner's direct appeal and the claims raised in Proposition 1 of Petitioner's first application for post-conviction relief.  See Haines v. Kerner, 404 U.S. 519, 520-21 (1972) (per curiam).

First, in Petitioner's application for post-conviction relief, Petitioner alleged that trial counsel "failed to investigate witnesses and evidence, failed to call witnesses, failed to challenge evidence and testimony, and committed other errors which failed to submit the prosecution's case to

14

adversarial testing, and violated his U.S. & Okla. Const. rights." Dkt. # 10-7 at 3. On post-conviction appeal, the OCCA concluded this claim was procedurally barred (Dkt. # 10-10). The OCCA further found that Petitioner's claim of ineffective assistance of appellate counsel was without merit and, therefore, did not serve as a "sufficient reason" for failing to raise the claim on direct appeal. Id. In his response to this federal petition, Respondent does not assert that the procedural bar constitutes an independent and adequate state ground for denying habeas relief. While the defense of procedural bar could be raised sua sponte, the Court concludes "that the most efficient course is to proceed to the merits, overlooking any waiver or procedural bar." Stuart v. Ward, 236 F. App'x 344, 348 (10th Cir. 2007) (unpublished)[6] (citation omitted).

On post-conviction appeal, Petitioner alleged trial counsel was ineffective because he "failed to obtain a medical examination and expert testimony demonstrating that petitioner's hands were not injured consistant [sic] with having beaten the victim." Dkt. # 10-7 at 6. As the OCCA noted on post-conviction appeal, "Petitioner not only wildly speculates that a medical examination would be able to make some determinative findings about any hand injuries (or the lack thereof) incurred by Petitioner during his robbery, but also neglects to provide sufficient information about how that suggested medical examination would have created a reasonable likelihood of a different result on appeal." Dkt. # 10-10 at 4 n.2. Petitioner makes no additional argument supporting his claim of ineffective assistance of counsel, and the Court need not "scour the record for factual support" for Petitioner's claim as it "[does] not assume the role of advocate for the *pro se* litigant." Crawford v. Addison, 526 F. App'x 893, 895 (10th Cir. 2013) (unpublished) (internal quotation omitted).

---

[6] This and all other unpublished opinions herein are not precedential but are cited for their persuasive value. See Fed. R. App. P. 32.1; 10th Cir. R. 32.1.

Petitioner has failed to show that his counsel was ineffective under Strickland, and the claim is

denied.  See Stuart, 236 F. App'x at 349.

Second, on direct appeal, Petitioner alleged his trial counsel was ineffective for failing to

effectively cross-examine Ahmad and "[t]he Officers who were witnesses in the Trial" about

Ahmad's injuries and for failing to subpoena Tim Warren, the crime scene photographer. Dkt. # 10-

2 at 1-3.  Addressing these issues, the OCCA concluded "counsel was not ineffective for failing to

develop evidence which was not relevant to the charged crime." Dkt. # 10-4 at 3 (footnote omitted).

The OCCA reasoned:

> Walker was charged, not with robbery while causing serious bodily injury, but with
> robbery while putting the victim in fear of immediate serious bodily injury.  While
> this charge did require testimony that Walker took physical action which made
> Ahmad afraid, it did not require proof that Ahmad actually was seriously injured.
> None of the evidence Walker would have had counsel elicit would have had an effect
> on the outcome of the trial.  He cannot show prejudice from counsel's failure to
> develop this evidence.

Id. at 3 n.4 (citations omitted).

To be entitled to habeas corpus relief on his claim of ineffective assistance of trial counsel,

Petitioner must demonstrate that the OCCA's adjudication of his claim was contrary to, or involved

an unreasonable application of Strickland v. Washington, 466 U.S. 668 (1984).  See 28 U.S.C. §

2254(d).  Strickland sets out a two-pronged standard for review of ineffective assistance of counsel

claims.  A defendant must show (1) his counsel's performance was deficient and (2) the deficient

performance was prejudicial.  Strickland, 466 U.S. at 687.

Petitioner can establish the first prong by showing counsel performed below the level

expected from a reasonably competent attorney in a criminal case. Id. at 687-88.  There is a "strong

presumption that counsel's conduct falls within the wide range of reasonable professional

16

assistance." Id. at 689 (citation omitted).  In making this determination, a court must "judge . . . [a] counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Id. at 690.  Moreover, review of counsel's performance must be highly deferential.  "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Id. at 689 (citation omitted).

To establish the second prong, Petitioner must show this deficient performance prejudiced his defense, to the extent "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694; see Sallahdin v. Gibson, 275 F.3d 1211, 1235 (10th Cir. 2002); Boyd v. Ward, 179 F.3d 904, 914 (10th Cir. 1999); Byrd v. Workman, 645 F.3d 1159, 1168 (10th Cir. 2011) (stating a petitioner must show counsel's errors rendered the results of the trial unreliable).  "The likelihood of a different result must be substantial, not just conceivable." Richter, 562 U.S. at 112.  A court's review of a state court's decision on ineffective assistance of counsel claims is "doubly deferential." Cullen v. Pinholster, 563 U.S. 170, 190 (2011) (noting a habeas court must "take a highly deferential look at counsel's performance" under Strickland and "through the deferential lens of § 2254(d)" (internal quotation marks omitted)).

Petitioner contends his trial counsel was ineffective for failing to cross-examine witnesses about Ahmad's injuries and for failing to subpoena the crime scene photographer to testify about Ahmad's injuries.  As the OCCA pointed out on direct appeal, it was not necessary for the jury to conclude Ahmad suffered serious bodily injury for the jury to find Petitioner guilty of robbery by

putting the victim *in fear* of immediate serious bodily injury.  Dkt. # 10-4 at 3 n.4.  Ahmad testified

Petitioner engaged in two actions – reaching behind his back multiple times as if he was reaching

for a weapon and telling Ahmad he was "going down" if he did not cooperate – that were sufficient

to show Petitioner intentionally put Ahmad in fear of immediate serious bodily injury.  See Dkt. #

11-1 at 95, 110.  Evidence of any physical injury suffered by Ahmad was not required to satisfy the

elements of First Degree Robbery.   Therefore, the Court cannot conclude that the OCCA's

determination that trial counsel was not ineffective because Petitioner did not suffer prejudice is

contrary to, or involved an unreasonable application of, clearly established federal law as determined

by the Supreme Court.  Habeas corpus relief is denied on Ground 3.

### 3.	Procedural Bar (Ground 4)

In Ground 4, Petitioner claims he "was denied [his] constitutional right when prosecution

entered tainted evidence as facts of the case" (Dkt. # 1).  Petitioner raised this claim in his first

application for post-conviction relief (Dkt. # 10-7).   In resolving this claim on post-conviction

appeal, the OCCA cited Okla. Stat. tit. 22 § 1086 and concluded the claim was procedurally barred

because Petitioner could have raised it on direct appeal.  Dkt. # 10-10 at 2.  The OCCA also

concluded Petitioner could not show a sufficient reason for failing to raise the issue on direct appeal

because, contrary to Petitioner's assertion, his appellate counsel was not ineffective.  Id. at 2-3.

The doctrine of procedural bar prohibits a federal court from considering a specific habeas

claim, resolved on an independent and adequate state procedural ground, unless the petitioner "can

demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal

law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of

justice."  Coleman v. Thompson, 501 U.S. 722, 750 (1991); see Maes, 46 F.3d at 985-86.  "A state

court finding of procedural default is independent if it is separate and distinct from federal law." Maes, 46 F.3d at 985 (citation omitted).  A finding of procedural default is an adequate state ground if it has been applied evenhandedly in the "vast majority" of cases.  Id. at 986 (citation omitted).

Applying the principles of procedural bar to these facts, the Court concludes Ground 4 is procedurally barred from this Court's review.  The state court's procedural bar, as applied to this claim, was an independent ground because Petitioner's failure to comply with state procedural rules was "the exclusive basis for the state court's holding."  See id. at 985.  The OCCA based its decision solely upon Oklahoma rules and case law, including Okla. Stat. tit. 22, § 1086.  In addition, the procedural bar was based on an adequate state ground.  See Ellis v. Hargett, 302 F.3d 1182, 1186 (10th Cir. 2002) (holding Okla. Stat. tit. 22, § 1086 "is an independent and adequate state ground for denying habeas relief").  Therefore, the OCCA's procedural bar is independent and adequate to preclude federal review.

This Court may not consider Petitioner's procedurally barred claim unless he is able to show cause and prejudice for the default, or demonstrate that a fundamental miscarriage of justice would result if his claims are not considered.  See Coleman, 501 U.S. at 750.  The cause standard requires a petitioner to "show that some objective factor external to the defense impeded . . . efforts to comply with the state's procedural rule."  Murray v. Carrier, 477 U.S. 478, 488 (1986).  Examples of such external factors include the discovery of new evidence, a change in the law, and interference by state officials.  See id.

In certain circumstances, appellate counsel's ineffectiveness can constitute "cause" sufficient to excuse a state prisoner's procedural default.  See Carrier, 477 U.S. at 488-89.  However, in order for an attorney's performance to constitute cause external to a petitioner, the attorney's performance

19

must be constitutionally ineffective under the standard established in <u>Strickland</u>. <u>See</u> <u>Coleman</u>, 501 U.S. at 752-54; <u>Hickman v. Spears</u>, 160 F.3d 1269, 1272 (10th Cir. 1998). Additionally, the ineffective assistance of appellate counsel claim itself must be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default. <u>Carrier</u>, 477 U.S. at 489; <u>Edwards v. Carpenter</u>, 529 U.S. 446, 453 (2000). As for prejudice, a petitioner must show "'actual prejudice' resulting from the errors of which he complains." <u>United States v. Frady</u>, 456 U.S. 152, 168 (1982).

In Ground 4, Petitioner alleges ineffective assistance of appellate counsel as cause for the procedural default. Dkt. # 1 at 10. On post-conviction appeal, Petitioner argued appellate counsel provided ineffective assistance in failing to raise the issue of prosecutorial misconduct. Dkt. # 10-7. The OCCA held "Petitioner's Application for Post-Conviction Relief failed to meet [the] threshold requirements for establishing a viable claim of ineffective assistance of appellate counsel" as "Petitioner's prosecutorial misconduct issue [] lacks any specifics or proof of prejudice." Dkt. # 10-10 at 4.

In his application for post-conviction relief, Petitioner appeared to allege the prosecutor's statement that he "beat Mr. Ahmad on his shoulders and body" was improper as it was unsupported by the evidence. Dkt. # 10-7 at 6. The record reflects Ahmad testified at trial that Petitioner "pulled me down, beat me and choked me and pushed me." <u>See</u> Dkt. # 11-1 at 94. As the prosecutor's statements were supported by the evidence, a claim of prosecutorial misconduct on direct appeal would have been meritless. Therefore, the Court cannot conclude the OCCA's adjudication of Petitioner's claim of ineffective assistance of appellate counsel was contrary to, or involved an

20

unreasonable application of, <u>Strickland</u>, and ineffective assistance of counsel cannot serve as cause to overcome the procedural bar.

Petitioner's only other means of gaining federal habeas review of his defaulted claims is a claim of actual innocence under the fundamental miscarriage of justice exception. The "fundamental miscarriage of justice" exception to a procedural bar applies "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." <u>Carrier</u>, 477 U.S. at 495-96; <u>Herrera v. Collins</u>, 506 U.S. 390, 403-04 (1993); <u>Sawyer v. Whitley</u>, 505 U.S. 333, 339-41 (1992); <u>Schlup v. Delo</u>, 513 U.S. 298 (1995). A "fundamental miscarriage of justice" requires a petitioner to demonstrate he is actually innocent of the crime of which he was convicted. <u>McCleskey v. Zant</u>, 499 U.S. 467, 494 (1991). "The exception is intended for those rare situations 'where the State has convicted the wrong person of the crime . . . . [Or where] it is evident that the law has made a mistake.'" <u>Klein v. Neal</u>, 45 F.3d 1395, 1400 (10th Cir. 1995) (citation omitted).

Petitioner has failed to make this showing. Petitioner does not claim he is actually innocent. Instead, Petitioner contends that "[t]his case is plainly Second Degree Robbery. [Petitioner] confessed to it and accepted the responsibility for it." <u>See</u> Dkt. # 12 at 8. Petitioner's argument is, at best, one of legal innocence and not actual innocence, and is insufficient to overcome the state procedural bar. <u>Laurson v. Leyba</u>, 507 F.3d 1230, 1233 (10th Cir. 2007). Therefore, the fundamental miscarriage of justice exception is inapplicable to this case.

As Petitioner cannot show cause and prejudice or a fundamental miscarriage of justice, Ground 4 is procedurally barred and denied on that basis.

**C.      Certificate of Appealability**

Pursuant to Rule 11, <u>Rules Governing Section 2254 Cases in the United States District Courts</u>, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."   Under 28 U.S.C. § 2253, the Court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right" and the Court "indicate[s] which specific issue or issues satisfy [that] showing."  A petitioner can satisfy that standard by demonstrating the issues raised are debatable among jurists, a court could resolve the issues differently, or the questions deserve further proceedings.   <u>Slack v. McDaniel</u>, 529 U.S. 473, 483-84 (2000) (citation omitted).  When a claim is denied on procedural grounds, Petitioner must demonstrate that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  <u>Id.</u> at 484.

After considering the record in this case, the Court concludes a certificate of appealability should not issue.  Nothing suggests the Tenth Circuit would conclude that this Court's application of AEDPA standards to the decisions by the OCCA was debatable amongst jurists of reason.  <u>See Dockins</u>, 374 F.3d at 937-38.  As to the claim denied on a procedural basis, Petitioner has failed to satisfy the second prong of the required showing, i.e., that the Court's ruling resulting in the denial of the claim on procedural grounds is debatable or incorrect.  The record is devoid of any authority suggesting the Tenth Circuit Court of Appeals would resolve the issues in this case differently.  The Court denies a certificate of appealability.

***CONCLUSION***

After careful review of the record, the Court concludes Petitioner has not established he is in custody in violation of the Constitution or laws of the United States.  Therefore, the petition for writ of habeas corpus shall be denied.

**ACCORDINGLY, IT IS HEREBY ORDERED** that,

1.    The Clerk of Court shall note on the record the substitution of Joe M. Allbaugh, Interim Director, as party respondent in place of Justin Jones, Director.

2.    Petitioner's "Motion for Stay to Pose Question to the Oklahoma [] Court of Criminal Appeals" (Dkt. # 13) is **denied**.

3.    The petition for writ of habeas corpus (Dkt. # 1) is **denied**.

4.    A certificate of appealability is **denied**.

5.    A separate judgment shall be entered in this matter.

**DATED** this 2nd day of May, 2016.

GREGORY K. FRIZZELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT